In the

# United States Court of Appeals

## For the Seventh Circuit

––––––––––––––––––

No. 21-3412

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SCOTT NJOS,

*Defendant-Appellant.*

––––––––––––––––––

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:07-cr-50036-1 — **Iain D. Johnston**, *Judge.*

––––––––––––––––––

ARGUED JANUARY 24, 2023 — DECIDED MAY 22, 2023

––––––––––––––––––

Before HAMILTON, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Counsel in criminal appeals and their clients sometimes disagree about which issues to raise on appeal. Unresolved disagreements can pose problems for defendants, their lawyers, and the appellate court. This appeal presents an unusual version of those problems. This court helped create the problem when we denied the

defendant's motion to dismiss his appellate counsel and al-
lowed a form of "hybrid" representation on appeal by allow-
ing appellant to file his own brief. We have said before,
though, that such hybrid representation is "forbidden" on ap-
peal. *United States v. Oreye*, 263 F.3d 669, 672–73 (7th Cir.
2001). Such hybrid representation may work in some cases,
but not when the client expressly disavows the one argument
raised by counsel. So, with thanks to counsel, we revisit ap-
pellant's motion to dismiss his counsel, grant it now, and af-
firm on the merits of the issues that appellant wished to raise.

I.    *Factual and Procedural Background*

In 2007, appellant Scott Njos pleaded guilty to six federal
crimes arising from robberies of several stores and a bank,
and for attempted escape and assault of an FBI agent after his
arrest. See 18 U.S.C. §§ 2113(a), 1951(a), 751(a), and 111(a).
Following two appeals, the district court eventually sen-
tenced Njos to 170 months in prison, to be followed by three
years of supervised release for each count, to be served con-
currently.

In January 2021, Njos began his three-year term of super-
vised release. He almost immediately violated several condi-
tions of supervised release. The probation office reported to
the district court that he tested positive for illegal substances,
failed to report to his probation officer, and failed to report for
drug testing and mental health treatment. Soon after, Njos
pleaded guilty in Illinois state court to eight new robberies.
The state courts sentenced him to concurrent 20- and 25-year
sentences. The federal government then petitioned for the
revocation of Njos's federal supervised release.

Njos proceeded pro se during the revocation process after the district court confirmed that his decision to represent himself was knowing and voluntary. See *Faretta v. California*, 422 U.S. 806, 835 (1975); *United States v. Johnson*, 980 F.3d 570, 577 (7th Cir. 2020). Throughout the revocation proceedings, Njos expressed concern about being held in the federal Bureau of Prisons. He repeatedly asked to be returned to the Illinois Department of Corrections as soon as possible so that he could obtain what he believed was better mental health treatment.

After Njos had been convicted and sentenced in state court for the new robbery charges, the federal district court found at the revocation hearing that Njos had violated the condition of supervised release not to commit another federal, state, or local crime. The federal government withdrew seven other charged violations that did not relate to the state offenses.

In a later hearing to address sentencing for those supervised release violations, the district court found that the five violations of supervised release (all committing new crimes) were Grade A, that Njos's criminal history category was VI, and that under the policy statements in Chapter Seven of the Sentencing Guidelines, the sentencing range was 33 to 41 months. The maximum possible revocation sentence based on 18 U.S.C. § 3583(b) was 144 months, if maximum 24-month sentences for each of the six supervised-release terms ran consecutively. The probation office recommended, and the government argued for, a total 82-month sentence.

Njos requested a 24-month sentence to run concurrently with his 20– and 25–year concurrent state sentences. He asserted that his underlying federal convictions were class C and D felonies, so he believed 24 months would be the statutory maximum sentence upon revocation. He argued that his

long history of mental illness—including being adjudicated guilty but mentally ill in state court on two of the charges stemming from his latest robbery spree—weighed against a lengthy sentence.

At the time of the sentencing hearing for the revocation, however, the district court did not have access to the presentence investigation report from the original 2008 convictions, nor to the psychological assessments submitted for Njos's original sentencing hearings. Njos told the district court he was eager to begin serving his state sentence so he could receive better mental health treatment. Noting Njos's desire to expedite the proceedings, the court said: "You don't need to be in court for this," explaining that, instead of reconvening the hearing at a later date, it would enter a written order imposing sentence. The court added: "I don't think you need to be physically in front of me for the announcement of the sentence." Njos thanked the judge for speeding up the process, and neither Njos nor the government objected to proceeding in this fashion.

In a written order released 20 days later, the court imposed a total of 82 months in prison for the six revocations—three 24-month terms each for the bank and two store robberies, consecutive to a 10-month term for one store robbery, all to run concurrently with two concurrent 24-month terms for the escape and assault convictions.

## II.  *Analysis*

### A.  *The Right to be Present for Sentencing*

The only issue that appointed counsel deemed strong enough to raise on appeal is whether the district court erred by imposing a prison sentence upon revocation in a written

order rather than face-to-face in a hearing with the defendant present in person. When counsel was not receptive to raising the other issues that Njos wished to argue, he filed a motion to dismiss counsel along with a brief setting forth his preferred arguments. We denied Njos's motion to dismiss counsel but allowed him to file the supplemental brief pro se.

Counsel's brief argues only that the district court procedurally erred by imposing a sentence in writing and without, counsel asserts, a knowing waiver of the right to be present. The government does not even try to defend the district court's choice to impose the prison sentence in writing, without having the defendant in court. See Fed. R. Crim. P. 32.1(b)(2); *United States v. Thompson,* 599 F.3d 595, 598–99 (7th Cir. 2010) (construing Rule 32.1(b)(2) as requiring defendant to be physically present with judge for revocation of supervised release); *United States v. Dillard*, 910 F.2d 461, 465 (7th Cir. 1990) (noting that court revoking supervised release must "state in open court the reasons for its imposition of the particular sentence"), citing 18 U.S.C. § 3553(c).

The government argues, however, that Njos waived any basis for relief from the district court's error in two ways: first by agreeing with the district court's suggested procedure and second by expressly denouncing counsel's pursuit of the issue.

Although Njos expressed gratitude to the court for trying to speed up the process, there is no indication in the record that he understood the right to be present or why his presence could matter. See *United States v. Turner*, 47 F.4th 509, 526 (7th Cir. 2022). Given the importance of the right, Njos's personal and medical reasons for wishing to get the sentencing over with, and the court's questionable statement that Njos

"did not need to be in court" for sentencing, we doubt that Njos understood himself to be giving up an important right. See *United States v. Boultinghouse*, 784 F.3d 1163, 1172 (7th Cir. 2015) (asking whether defendant had "a sufficient grasp of a particular right or consequence of the waiver").

But we need not decide that question of waiver in the district court. Njos has intentionally waived the argument on appeal. He has made clear that he has no interest in challenging the legality of imposing a sentence in writing. He has said so numerous times, even using the word "waiver" to describe his decision. After seeing his attorney's brief for him, he cannot have been ignorant of the right at stake. See *United States v. Davis*, 29 F.4th 380, 387 (7th Cir. 2022), citing *United States v. Cavender*, 228 F.3d 792, 803 (7th Cir. 2000). Still, his appointed counsel persisted with the argument rather than requesting to withdraw because she does not believe the issue is frivolous. See generally *Anders v. California*, 386 U.S. 738 (1967).

We agree that the issue is not frivolous. We also understand counsel's reluctance to concede that her client's statements in this court amount to waiver. Yet it is now clear that this court's and counsel's effort to balance counsel's obligations to her client and the court with Njos's right to represent himself has become untenable. The most prudent step is to reconsider our earlier decision that placed the defendant and counsel in this position. A merits panel may re-examine a ruling by a motions judge or panel. *Hor v. Gonzales*, 421 F.3d 497, 498 (7th Cir. 2005); *United States v. Alcantar*, 83 F.3d 185, 191 (7th Cir. 1996). Doing so is appropriate if the merits panel is more equipped to make the decision. *United States v. Henderson*, 536 F.3d 776, 778 (7th Cir. 2008). In this case, events since

the initial ruling let us appreciate better the effect of the conflict between client and counsel here.

On our own initiative, therefore, we reconsider the order of August 19, 2022, denying defendant-appellant's motion to discharge court-appointed counsel. The motion is hereby granted, and counsel's representation of Njos is terminated. This action allows us to accept Njos's decision not to argue about his right to be present without creating troubling implications for future cases.

We commend counsel for her vigorous representation of her now-former client and her efforts to preserve, despite the difficult circumstances, the important argument about a criminal defendant's right to be sentenced in person for a revocation of supervised release. We need not decide whether Njos waived the in-person issue on appeal before he expressly disavowed counsel's pursuit of the issue, nor whether the district court plainly erred when it imposed a prison sentence in writing.

B. *The Maximum Guideline Range*

We turn now to Njos's pro se arguments. Njos argues that his sentence exceeds the statutory maximum and the applicable range under the Guidelines. He contends that the table in U.S.S.G. § 7B1.4(a) prescribes a reimprisonment range of 33–41 months. But he asserts that, based on his criminal history score and Grade A violations, § 7B1.4(b)(3)(A) substitutes a maximum of 24 months, see 18 U.S.C. § 3583(e)(3), because each underlying crime was a Class C felony. But 24 months is the maximum for *each* Class C or Class D conviction. See *id*. Njos has six such convictions and six concurrent terms of supervised release. We have held that "a district court has

discretion to impose consecutive prison terms upon revoking concurrent terms of supervised release." *United States v. Deutsch*, 403 F.3d 915, 918 (7th Cir. 2005). The district court thus did not exceed the maximum possible sentence of 144 months—six consecutive 24-month terms—when it sentenced him to 82 months in prison.

C. *Substantive Reasonableness*

Next, Njos contends that his revocation sentence is unreasonably long. Our substantive review of a revocation sentence is "highly deferential." *United States v. Ford*, 798 F.3d 655, 663 (7th Cir. 2015), citing *United States v. Jones*, 774 F.3d 399, 403 (7th Cir. 2014). We will overturn a revocation sentence only if it is "plainly unreasonable." *United States v. Childs*, 39 F.4th 941, 944–45 (7th Cir. 2022). The guideline ranges for supervised release were advisory even before *Booker* made the bulk of the Sentencing Guidelines advisory, and the supervised release ranges "inform rather than cabin" the district court's discretion. *United States v. Neal*, 512 F.3d 427, 438 (7th Cir. 2008); see generally *United States v. Booker*, 543 U.S. 220 (2005). To determine a reasonable sentence, a district court should start with U.S.S.G. § 7B1.4 and consider the § 3553(a) factors.

The district court here followed these procedures and decided to make the prison terms partially consecutive, which was within its discretion. See U.S.S.G. § 7B1.3(f); *United States v. Taylor*, 628 F.3d 420, 423 (7th Cir. 2010). The court also provided sufficient explanation for this decision. The court thoroughly considered the required mitigation factors, including Njos's need for mental health and drug dependency treatment, and it balanced them against the number and seriousness of the violations. See 18 U.S.C. § 3553(a). The sentence it

selected based on these considerations is not plainly unreasonable. See *Neal*, 512 F.3d at 439.

For these reasons, upon our reconsideration, Njos's motion of July 22, 2022, to discharge appointed counsel is GRANTED, and the appointment of Johanna M. Christiansen and the Office of the Federal Defender is terminated. She has the thanks of the court. Njos's revocation sentence is AFFIRMED.