# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-3244

———————

| | | |
|---|---|---|
| Kenneth Harold Swipies, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Frank Kofka, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: May 11, 2005
Filed: August 12, 2005

———————

Before MORRIS SHEPPARD ARNOLD, MURPHY, and BENTON, Circuit Judges.

———————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Kenneth Swipies sued Woodbury County, Iowa, Deputy Sheriff Frank Kofka under 42 U.S.C. § 1983 for violating his fourteenth amendment rights to substantive and procedural due process. The jury found in favor of Deputy Kofka with respect to the substantive due process claim. As to the procedural due process claim, however, it found for Mr. Swipies and awarded him $1 in nominal damages and $30,000 in punitive damages. Deputy Kofka appeals. He argues that the district court should have entered judgment as a matter of law in his favor with respect to the existence of a liberty interest, the sufficiency of the process afforded to Mr. Swipies, and the propriety of the punitive damages award. In the alternative, Deputy Kofka

argues that the district court should have granted his motion for a new trial because it erroneously failed to give a jury instruction that he requested. We conclude that Mr. Swipies had a protected liberty interest that was violated, and that Deputy Kofka's jury instruction was properly refused. We also hold, however, that Mr. Swipies is not entitled to punitive damages.

## I

Deputy Kofka was serving warrants when he saw Kendra Swipies, Mr. Swipies's twelve-year-old daughter, with Tina Swipies, Mr. Swipies's wife at the time (not Kendra's mother), and James Stark, a man whom Deputy Kofka knew to be facing sexual abuse charges, near Mr. Swipies's house. Deputy Kofka knew Kendra and Mr. Swipies because he was a friend of Kendra's mother, Mr. Swipies's ex-wife, Dawn Ebert. Shortly before Deputy Kofka spotted Kendra, she had come to her father's house for the start of a two-week, court-ordered visitation. Seeing Kendra in Mr. Stark's presence prompted Deputy Kofka to telephone a county attorney and ask him if he (Deputy Kofka) could perform an emergency removal of Kendra. The attorney responded that Deputy Kofka could remove Kendra from her father's custody if Deputy Kofka could articulate the bases for his decision to do so. Following this conversation, Deputy Kofka drove to Mr. Swipies's house and, in Mr. Swipies's presence, removed Kendra. After taking Kendra from Mr. Swipies's residence, Deputy Kofka phoned his supervisor and asked him to call the county attorney's office and the Iowa Department of Human Services to tell them that he had removed Kendra. Deputy Kofka did not call the juvenile court or ask his supervisor to do so. And he returned Kendra to her mother, the custodial parent, without informing Mr. Swipies that he had done so.

## II.

Deputy Kofka argues that the district court should have entered judgment as a matter of law in his favor with regard to the due process claim because he did not infringe on a constitutionally protected liberty interest. The heart of Mr. Swipies's

procedural due process claim is that he was deprived of a post-removal hearing because Deputy Kofka did not follow the procedures outlined in Iowa Code § 232.79. That statute requires a police officer who removes a child to inform the juvenile court of the emergency removal immediately so that the court can make arrangements for the child's welfare. Deputy Kofka asserts that the Constitution did not guarantee Mr. Swipies any procedure because it did not protect his right, as a non-custodial parent, to visit with his daughter.

Judgment as a matter of law is appropriate when "[t]here is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving] party on [an] issue." Fed. R. Civ. P. 50. We review a district court's post-verdict denial of a motion for judgment as a matter of law *de novo*, though we view the evidence in the light most favorable to the jury's verdict. *Voeltz v. Arctic Cat, Inc.*, 406 F.3d 1047, 1050 (8th Cir. 2005). Here the parties agree upon the facts relevant to this appeal, and those facts are supported by the evidence presented at trial.

The due process clause of the fourteenth amendment says, in relevant part, that no state shall "deprive any person of ... liberty ... without due process of law." U.S. Const. amend. XIV, § 1. To establish a procedural due process violation under this provision, a plaintiff must first show that the state infringed on a cognizable liberty interest. *Cf. Clark v. Kansas City Mo. Sch. Dist.*, 375 F.3d 698, 701 (8th Cir. 2004). As a general matter, parents have a liberty interest in the "care, custody, and management of their children." *Manzano v. South Dakota Dep't of Soc. Svcs.*, 60 F.3d 505, 509-10 (8th Cir. 1995). That said, in the past we have hedged on the question of whether non-custodial parents possess such an interest, and we have noted that the interest is subject to a *de minimis* exception: "Although we have recognized the possibility that visitation and placement decisions may be subject to due process scrutiny, as such decisions may infringe upon a parent's interest in the 'care, custody, and management of [his or her] child,' we have not yet found a case where the right to visitation was infringed in a manner that rose to the level of a

-3-

constitutional violation." *Zakrzewski v. Fox*, 87 F.3d 1011, 1014 (8th Cir. 1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)) (additional citation and quotations omitted).

Deputy Kofka draws on both strands of this statement from *Zakrzewski*. He contends that the Constitution did not protect Mr. Swipies's right to visit his daughter and that even if Mr. Swipies had a cognizable right to visitation, any infringement was so brief as not to be actionable. To support this second point further, he analogizes the present case to *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302 (2002). The Supreme Court concluded in that case that a temporary moratorium on real estate development did not constitute a categorical taking under the fifth amendment's takings clause. *Id.* at 320-21.

We reject Deputy Kofka's initial argument and conclude that Mr. Swipies had a protected liberty interest. Though in *Zakrzewski* we did not rule on the question of whether a non-custodial parent has a liberty interest in the care, custody, and management of his or her child, we held in an earlier appeal in this case that Mr. Swipies possessed such an interest. *Swipies v. Kofka*, 348 F.3d 701, 703-04 (8th Cir. 2003). We are bound to follow this holding. It is not only the law of the case, *see, e.g., Popp Telecom, Inc. v. American Sharecom, Inc.*, 361 F.3d 482, 490 (8th Cir. 2004), but the law of the circuit, *i.e.*, a decision of another panel which only the court *en banc* may overturn, *see United States v. Bordeaux*, 400 F.3d 548, 554 (8th Cir. 2005).

Even if our decision were not controlled by our previous holding, we would reach the same conclusion. If a state court affords a non-custodial parent visitation rights, we believe that the parent possesses, at least in some form, the liberty interest recognized in *Manzano*. A parent with visitation rights takes part in raising the child by making decisions about care, custody, and management during the period of the

visitation, and thus he or she has the sort of parental role that deserves to be protected as a liberty interest.

To the extent that a *de minimis* exception attaches to this liberty interest, it does not apply to this case because Kendra was scheduled to be with Mr. Swipies for two weeks, and not just a few days, as in *Zakrzewski*, 87 F.3d at 1012-13. Relatedly, we are not persuaded by Deputy Kofka's analogy to *Tahoe-Sierra Preservation Council.* That case did not create a generally applicable *de minimis* principle, but instead held that a temporary moratorium on real estate development was not a certain kind of taking. *Tahoe-Sierra Preservation Council*, 535 U.S. at 320-21. We do not see how this holding translates into anything useful in the context of the due process clause, for we know of no reason to think that a period of deprivation is too short to be cognizable for purposes of the due process clause just because the same period is too short to be cognizable for purposes of the takings clause.

### III.

Deputy Kofka argues as well that the court erred in denying his motion for judgment as a matter of law because Mr. Swipies received all of the process that he was due at a hearing following the removal. Mr. Swipies filed a motion to hold his wife in contempt in the state court that presided over the divorce proceedings and that retained jurisdiction over related matters. The claim related to his wife's role in the removal. The judge held a hearing on this claim seventeen days after Deputy Kofka removed Kendra. Mr. Swipies, Deputy Kofka, and Ms. Ebert testified at this hearing, and Mr. Swipies, who represented himself, had an opportunity to cross-examine Deputy Kofka and Ms. Ebert. The judge decided not to hold Ms. Ebert in contempt for her role in the removal.

To establish a procedural due process violation, a plaintiff need not only show a protected interest, but must also show that he or she was deprived of that interest without sufficient process, *i.e.*, without due process. *Clark*, 375 F.3d at 701. The due

process clause ensures every individual subject to a deprivation "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The circumstances of the deprivation dictate what procedures are necessary to satisfy this guarantee. *Mathews*, 424 U.S. at 333-34. In the context of child removal cases, the "meaningful time" and "meaningful manner" assurances impose a duty on the state to hold a hearing promptly after the removal. *See Whisman v. Rinehart*, 119 F.3d 1303, 1310-11 (8th Cir. 1997).

Deputy Kofka maintains that the contempt hearing satisfied the requirements of the due process clause. He emphasizes that Mr. Swipies's interest was slight, because he was not the custodial parent, and that Mr. Swipies had a chance to present his side of the story and cross-examine Ms. Ebert and Deputy Kofka. Under the circumstances, he argues, nothing more was required.

We hold that Mr. Swipies did not receive all of the process to which he was entitled. Mr. Swipies was deprived of the opportunity to be heard at a meaningful time because the hearing occurred seventeen days after the removal. In *Whisman*, we decided, based on the facts of the case, that a hearing held seventeen days after a removal was not prompt enough for the purposes of the due process clause. *Id.* We reach the same conclusion here. The relative tardiness of this hearing is evident when one recognizes that it occurred after Mr. Swipies's two-week visitation period would have ended had it not been cut short by the removal. We do not believe, moreover, that the fact that *Whisman* involved a custodial parent's rights counsels a different outcome. Allowing the state to hold the hearing at a later date would lessen its administrative burden, but even a non-custodial parent's rights are sufficiently important to justify the greater burden of an earlier hearing. *See generally Mathews*, 424 U.S. at 335. For, as the court said in *Jordan v. Jackson*, 15 F.3d 333, 343 (4th Cir. 1994), "[t]he bonds between a parent and child are, in a word, sacrosanct." To put the matter otherwise, if seven days is too long for a car owner to wait for a post-

deprivation hearing after his or her car has been towed and impounded, *Coleman v. Watt*, 40 F.3d 255, 260-61 (8th Cir. 1994), as a matter of law, a parent should not have to wait seventeen days after his or her child has been removed for a hearing.

IV.

Deputy Kofka contends that the district court erred when it denied his motion for a new trial, which was based on the court's refusal to give a jury instruction on good faith as to the procedural due process claim. Deputy Kofka asked the court to instruct the jury on the good-faith defense contained in Iowa Code § 232.79(3). This subsection provides, "[a]ny person ... acting in good faith in the removal or keeping of a child pursuant to this section ... shall have immunity from any civil or criminal liability that might otherwise be incurred or imposed as the result of such removal or keeping." The judge instructed the jury on good faith as to the substantive due process claim (which focused on the propriety of the decision to remove Kendra), but refused to instruct it on good faith as to the procedural due process claim.

If a district court improperly instructs a jury, a new trial may be appropriate. *See McKay v. WilTel Communication Sys., Inc.*, 87 F.3d 970, 976 (8th Cir. 1996); *see* Fed. R. Civ. P. 59. We review jury instructions for an abuse of discretion. *Sanders v. May Dep't Stores Co.*, 315 F.3d 940, 946 (8th Cir. 2003), *cert. denied*, 539 U.S. 942 (2003). The touchstone of our review is whether the instructions, "taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." *Brown v. Sandals Resorts Int'l*, 284 F.3d 949, 953 (8th Cir. 2002) (internal quotations omitted). Reversal for a new trial is appropriate only if there was an error that affected a substantial right of the moving party. *Sanders*, 315 F.3d at 946.

Deputy Kofka insists that the Iowa statute provides a good-faith defense for actions following removal, and not just for the removal itself. Thus, he asserts, by not instructing the jury on good faith as to post-removal activities, the district court

presented an inaccurate picture of the law relevant to the procedural due process claim.

The district court did not err by failing to give the good-faith instruction because the supremacy clause prohibits § 232.79(3) from playing either of the two possible roles that Deputy Kofka seeks to assign to it. *See* U.S. Const. art. VI, cl. 2. One possibility is that Deputy Kofka sees the good-faith provision as, quite straightforwardly, a defense to liability under § 1983. In other words, he might believe that § 232.79(3) immunizes a good-faith defendant who would otherwise be liable under § 1983 for depriving an individual of a purely federal right. *See* 42 U.S.C. § 1983. This argument is of course untenable. The Supreme Court has concluded that the supremacy clause bars state laws from shielding defendants from liability under § 1983. *Martinez v. California*, 444 U.S. 277, 284 & 284 n.8 (1980). The other possibility, closely related to the first, is that Deputy Kofka thinks that Mr. Swipies's procedural due process rights spring from the state statute so that the federal claim will be defeated if the state law claim fails. This argument is also unsupportable: a state statute cannot dictate what procedural protections must attend a liberty interest – even a stated-created one – as this is the sole province of federal law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 540-41 (1985). (To be clear, the state statute does not create the liberty interest here.) As the instruction would have misrepresented the applicable law, the district court did not err by refusing to give it.

We think it appropriate at this point to note that while the jury instructions were not defective for lack of the good-faith instruction, they were flawed for another reason: they indicated that Mr. Swipies was entitled to judgment in his favor on the procedural due process § 1983 claim if he proved that Deputy Kofka had violated § 232.79 of the Iowa Code. To prevail under § 1983, a plaintiff must show that one of his or her federal rights has been violated. *See, e.g., Scheeler v. City of St. Cloud*, 402 F.3d 826, 830 (8th Cir. 2005). Violation of a state statutory provision necessarily

establishes a procedural due process violation only if the statutory provision requires the same process as federal law, and no more. Section 232.79 and the due process clause, however, are not coextensive. For example, the due process clause does not require a police officer to take a removed child to a place designated by court rules, *see* § 232.79(2), as this is not necessary for providing a parent with notice and a meaningful opportunity to be heard. Because the Iowa Code and the due process clause are not coterminous, Deputy Kofka did not violate the due process clause (and by extension, § 1983) simply by neglecting to follow the Iowa Code word for word, and the jury should not have been instructed otherwise. To reiterate, as we have repeatedly held, a defendant is liable under § 1983 only if he or she has deprived the plaintiff of a federal right.

All of this said, we will not correct the error because of our view of the proper role of courts in an adversarial system. Deputy Kofka did not challenge the above-described aspect of the jury instructions before the district court, thus triggering plain error review, Fed. R. Civ. P. 52(d)(2); *Littrell v. Franklin*, 388 F.3d 578, 586-87 (8th Cir. 2004); *see United States v. Olano*, 507 U.S. 725 (1983), and he did not raise the matter on appeal. What is more, he did not adopt the argument when, at oral argument, we pointed out that the case appeared to have been submitted to the jury on an improper theory. He did little more than acknowledge that no one had noticed this problem. Though we can correct plain errors *sua sponte*, *see Silber v. United States*, 370 U.S. 717, 718 (1962), the amount of inaction in this case is too much for us to brook. To correct the error, we would have to notice *sua sponte* that the district court did not act *sua sponte* to provide a jury instruction that the defendant should have provided, and then we would have to remedy the problem in the face of the defendant's relative indifference to it. We have an adversarial system of justice, not an inquisitorial one, and to proceed along the path described above would be to blur the line between the two systems. We decline to do so.

V.

Deputy Kofka finally argues that the district court erred when it denied his motion for judgment as a matter of law as to the availability of punitive damages. Deputy Kofka knowingly deviated from § 232.79(2). This subsection obligates an officer who has removed a child to bring the child to a place designated by court rules, make a reasonable effort to inform the parent or guardian (presumably from whom the child was taken) of the whereabouts of the child, immediately orally inform the juvenile court of the emergency removal and the circumstances surrounding it, and provide a written version of the information orally conveyed to the court. Iowa Stat. § 232.79(2). Deputy Kofka admits that he did not do any of these things.

Punitive damages may be assessed in a § 1983 case when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). In *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534-539 (1999), the Court offered guidance on the meaning of this standard. (Though *Kolstad* discusses the punitive damages provision for Title VII claims, 42 U.S.C. § 1981a(b)(1), we believe that the discussion applies to § 1983 because Congress modeled § 1981a(b)(1) on *Smith*'s discussion of punitive damages under § 1983. *Kolstad*, 527 U.S. at 535-36; *Iacobucci v. Boulter*, 193 F.3d 14, 25-26, 26 n.7 (1st Cir. 1999).) The Court pointed out that the standard is subjective and, to prove reckless indifference, requires evidence that the defendant acted "in the face of a perceived risk that [his or her] actions [would] violate federal law." *Kolstad*, 527 U.S. at 536.

Deputy Kofka argues that punitive damages are not warranted in this case because "[t]here was no evidence ... from which a jury could conclude that [he] knew he may be violating federal law." Unsurprisingly, Mr. Swipies does not think that the court erred in denying the motion for judgment as a matter of law. Mr. Swipies asserts that Deputy Kofka's insouciance toward the requirements of state law and his

friendship with Ms. Ebert establish that he was recklessly indifferent to Mr. Swipies's due process rights.

We hold that there was no legally sufficient evidentiary basis on which a reasonable jury could have found for Mr. Swipies as to punitive damages. No evidence adduced at trial showed that Deputy Kofka acted in the face of a perceived risk that his post-removal actions violated federal law.

The fact that Deputy Kofka recognized that he was violating state law has no bearing on whether he knew that he was violating, or might be violating, federal law; all state law is not coterminous with federal law – there would be little need for it if it were. As for Deputy Kofka's friendship with Ms. Ebert, it is of no value to Mr. Swipies. As we have said, a plaintiff can establish that punitive damages are appropriate by proving either that the defendant acted with ill will or that the defendant was recklessly indifferent to the plaintiff's federal rights. *Smith*, 461 U.S. at 56. Mr. Swipies rested his argument entirely on the reckless indifference theory, and the court instructed the jury on this theory, to the exclusion of ill will. To establish that punitive damages were appropriate on the basis of reckless indifference, Mr. Swipies needed to show that Deputy Kofka knew that he was violating Mr. Swipies's federal rights or recognized that he might be doing so. *See Kolstad*, 527 U.S. at 536. The fact that Deputy Kofka had a friendship with Ms. Ebert demonstrates nothing at all about Deputy Kofka's knowledge of Mr. Swipies's federal rights. Deputy Kofka was entitled to judgment as a matter of law as to the availability of punitive damages.

Why would a jury, presumably composed of reasonable people, reach an unreasonable result? The answer can be found in the jury instructions. One of the instructions reads, "[i]f you find the conduct of the defendant was recklessly and callously indifferent to the plaintiff's rights to have the Iowa Code followed when his daughter was removed, you may award punitive damages." This is an incorrect

statement of law because federal law is what counts, not the Iowa Code: as pointed out earlier, the Iowa Code does not mimic federal law; it requires more in some regards. But if it were a correct statement of law, the jury's verdict would be reasonable in light of the evidence introduced at trial.

## VI.

For the reasons given above, we affirm the jury's finding that Mr. Swipies's procedural due process rights were violated, but vacate the award of punitive damages.

_____