

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-22-2008

# Brown v. Daniels

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3429

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Brown v. Daniels" (2008). *2008 Decisions.* Paper 633.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/633

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3429
_____

KEVIN E. BROWN; ERICA BROWN,

Appellants

v.

TINA DANIELS;
BRANDY NEIDER, CPS INVESTIGATOR;
BERKS COUNTY CHILDREN AND YOUTH SERVICES

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 03-cv-04242
(Honorable Petrese B. Tucker)

_____

Submitted Under Third Circuit LAR 34.1(a)
June 19, 2007

Before:  SCIRICA, Chief Judge, FUENTES and SMITH, Circuit Judges.

(Filed: August 22, 2008)

_____

OPINION OF THE COURT
_____

PER CURIAM.

Appellants Kevin and Erica Brown, proceeding pro se, appeal from the District

Court's grant of Appellee's motion for judgment as a matter of law, its rulings on two motions in limine, and its denial of their motion to amend the complaint. For the reasons that follow, we will affirm.

This lawsuit arises out of events beginning on May 21, 2003, when Travonne, the son of Erica Brown and stepson of Kevin Brown, was brought to Berks County Children and Youth Services ("BCCYS") by his maternal aunt. Based on the aunt's allegations that Kevin Brown had physically abused his stepson, Tina Daniels, a BCCYS caseworker, initiated an investigation. Daniels attempted to contact both of the Appellants by phone and followed up with separate letters to each of them the following week explaining that Travonne and his sister were residing with their maternal grandmother and that "a plan for guardianship or custody needs to be decided as soon as possible in order to resolve the matter." A hearing was scheduled for June 25, 2003, approximately four weeks later, and was then continued until July 9, 2003 at Erica Brown's request, with Travonne to remain with his maternal grandmother until further notice. At the July 9 hearing, the Juvenile Court directed the family to begin counseling and ordered that Travonne remain with his grandmother under the "protective supervision" of BCCYS.

On August 11, 2003, Appellants filed the underlying complaint in the United States District Court for the Eastern District of Pennsylvania. In it, they alleged that BCCYS, Daniels, and Supervisor Brandy Neider violated their substantive due process rights by examining Travonne without their consent, notifying Kevin Brown's employer

2

of the abuse allegations, and harassing them during the healing process. They further alleged that Appellees violated their procedural due process rights by taking Travonne into custody without promptly conducting a hearing. On Appellees' motion, the District Court dismissed the action for failure to state a claim upon which relief could be granted, and in the alternative, held that Appellees were entitled to qualified immunity. On appeal, we affirmed in part, upholding the dismissal of BCCYS, Neider, and Appellants' substantive due process claims from the action. We vacated and remanded the District Court's judgment with respect to claims that Daniels violated Appellants' procedural due process rights, holding that Appellants had sufficiently alleged a violation of their procedural due process rights to survive a motion to dismiss.

Following our remand, the District Court held a two-day trial in which Erica Brown represented herself. During the course of the trial, Brown elicited testimony from Kevin Brown and other family members regarding the events of May 21. The testimony indicated that, upon learning that her children were at her mother's house, Brown went to the police station that evening to request police assistance in getting the children back. She was told that there was a protection from abuse ("PFA") order in place, and that the police could not assist her. All of her witnesses testified that the Browns returned from the police station unsuccessful in getting their children back. The remainder of the testimony at trial focused on the emotional, psychological and economic damages suffered by the Brown family as a result of the children's removal from their home.

3

Appellants did not call any representatives of the police department or BCCYS as witnesses. At the close of Appellants' case, Daniels moved for judgment as a matter of law, which motion the District Court granted in an oral opinion. Appellants then filed a motion for reconsideration which the District Court denied in a written opinion and order entered on June 19, 2006. Appellants timely filed a notice of appeal.

Appellants challenge four of the District Court's rulings in this appeal: (i) its grant of Appellee's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a); (ii) its grant of Appellee's motion in limine to dismiss Kevin Brown from the action for lack of standing; (iii) its denial of Appellants' motion in limine to exclude certain BCCYS files from the trial; and (iv) its denial of Appellants' motion to amend their complaint.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We note first that Appellants failed to order a transcript of the proceedings as required by Federal Rule of Appellate Procedure 10(b)(1). Appellee has urged us to dismiss Appellants' first three claims on this ground. See Fed. R. App. P. 3(a)(2); see also Horner Equip. Intern., Inc. v. Seascape Pool Ctr., Inc., 884 F.2d 89, 92-93 (3d Cir. 1989). However, because Appellants are proceeding pro se and in forma pauperis, we ordered the court reporter to prepare a transcript of the trial testimony pursuant to 28 U.S.C. §§ 753(b) & 1915(c). Accordingly, we will not dismiss Appellants' claims.

We exercise plenary review over a District Court's entry of judgment as a matter

4

of law.  See Goodman v. Pennsylvania Turnpike Comm'n, 293 F.3d 655, 664-65 (3d Cir. 2002).  As with grants of summary judgment, the reviewing court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000).  Generally, a Rule 50 motion should be granted only if the evidence is not sufficient for a jury reasonably to find liability.  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993); see also Fed. R. Civ. P. 50(a) (permitting entry of judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue").

At the close of Appellants' case, Appellee moved for, and the District Court entered, judgment as a matter of law.  In its written opinion and order denying Appellants' motion for reconsideration, the District Court explained that it had granted Appellee's motion based on its conclusion that Appellants had failed to present sufficient evidence to support a finding that their son had been taken into "protective custody" within the meaning of 23 Pa. Cons. Stat. Ann. § 6315, or, assuming he was in "protective custody," that Daniels had acted unreasonably in not initiating a hearing within 72 hours. Appellants contest the District Court's conclusion, arguing that under 55 Pa. Code § 3490.57, placement of children with relatives constitutes protective custody, and therefore they should have been afforded a hearing within 72 hours.

5

Appellants' claims are grounded in the Child Protective Services Law ("CPSL"), 23 Pa. Cons. Stat. §§ 6301-6386. Section 6315 permits a child to be taken into "protective custody" if it is immediately necessary for the child's protection. That section further requires that the parents be immediately informed of the whereabouts of their children, specifies that an informal court hearing must be held within 72 hours to determine whether "to allow the child to remain in the home would be contrary to the welfare of the child," 23 Pa. Cons. Stat. § 6315(d); see also 42 Pa. Cons. Stat. Ann. § 6332(a), and defines the "place of detention" as "an appropriate medical facility, foster home or other appropriate facility approved by the department for this purpose." 23 Pa. Cons. Stat. § 6315(e). The section of the Pennsylvania Code referred to by Appellants in their brief provides:

> A child taken into protective custody may be placed only in the following locations:
>
> (1) A hospital, if hospitalization is medically necessary in the opinion of the attending physician.
> (2) A home of a relative of the child or other individual who has a significant relationship with the child or the child's family. The home shall be approved by the county agency for this purpose.
> (3) A foster family home approved by a licensed foster family care agency.
> (4) A licensed residential child care facility.

55 Pa. Code § 3490.57(d). That section further provides that protective custody "may not be maintained longer than 72 hours without an informal hearing under section 6332 of the Juvenile act (relating to informal hearing)." 55 Pa. Code § 3490.57(a).

6

Against this backdrop, Appellants maintained throughout trial that they were not afforded a hearing within 72 hours of Travonne's placement by Appellee with his grandmother, and therefore, their procedural due process rights were violated. The District Court held that Appellants' claim must fail as a matter of law because they failed to present sufficient evidence to support a finding that Travonne had been taken into "protective custody" within the meaning of 23 Pa. Cons. Stat. Ann. § 6315, or, assuming that he was in "protective custody," that Daniels had acted unreasonably in not initiating a hearing within 72 hours.

In entering judgment as a matter of law, the District Court focused on the procedures required under state statute when a child is taken into protective custody. We agree with the District Court that Appellants did not set forth sufficient evidence at trial to support a finding that Travonne was taken into "protective custody" within the meaning of 23 Pa. Cons. Stat. Ann. § 6315. However, an inquiry into whether Appellants were afforded all of the process they were due cannot end there. It is well settled that state law does not define the parameters of due process for the purposes of the Fourteenth Amendment. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the Due Process Clause applies, the question remains what process is due. The answer to that question is not to be found in the [state] statute.") (citation and internal quotation marks omitted); Swipies v. Kofka, 419 F.3d 709, 716 (8th

7

Cir. 2005) (holding that "a state statute cannot dictate what procedural protections must attend a liberty interest . . . as this is the sole province of federal law").

Whether or not under the facts of this case, compliance with the procedures set out in the CPSL conforms with the requirements of federal due process is an issue we need not decide here because we can affirm on other grounds. See Nicini v. Morra, 212 F.3d 798, 805 (3d Cir. 2000) (en banc) (concluding that we may affirm the District Court on any grounds supported by the record). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Matthews v. Eldridge, 424 U.S. 319, 333 (1976). Whether Appellants' procedural due process rights were violated by Appellee's failure to schedule a hearing regarding the placement of their son with sufficient promptness can be determined by a balancing of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 334035; see also Miller v. City of Philadelphia, 174 F.3d 368. The private interest here is the right to family integrity, which this Court has indicated must be balanced against the state's interest in protecting children suspected of being abused. See Miller, 174 F.3d at 373; Croft v. Westmoreland County Children & Youth Serv., 103 F.3d 1123,

1125 (3d Cir. 1997).  As explained in Patterson v. Armstrong, 141 F. Supp. 2d 512

(W.D. Pa. 2001):

> . . . While not *dispositive*, the statutory schemes adopted by the Pennsylvania legislature in the familial integrity arena are highly *relevant* to this Court's consideration of the second and third factors. . . .
>
> The "additional or substitute procedural safeguards" that the defendants should have followed in this case were those carefully crafted and interlocking procedures of the CPSL and the Juvenile Act.  The "probable value" of following the legislatively mandated procedures, providing for quick judicial review, is in the greatly reduced risk of erroneous interference with parental rights and the integrity of the family unit.  Similarly, the legislature obviously considered the fiscal and administrative burdens that would fall on child protective services agencies and local law enforcement officials charged by the CPSL, the Juvenile Act, the PFA Act with protecting the safety and welfare of children and with safeguarding the constitutional rights of parents and the family, and enacted related legislation ***mandating*** specific procedural requirements.  The Pennsylvania General Assembly must be presumed to have intended those burdens be carried by the appropriate local officials.

Id. at 538.

It is well-settled that "in emergency circumstances which pose an immediate threat

to the safety of a child, officials may temporarily deprive a parent of custody without

parental consent or a court order."  Hollingsworth v. Hill, 110 F.3d 733, 739 (10th Cir.

1997).  However, "in those extra-ordinary situations where deprivation of a protected

interest is permitted without prior process, the constitutional requirements of notice and

an opportunity to be heard are not eliminated, but merely postponed."  Suboh v. District

Attorney's Office of Suffolk, 298 F.3d 81, 92 (1st Cir. 2002) (citations and internal

quotation marks omitted).  Thus, "[w]hen the state removes a child from her parents, due

9

process guarantees prompt and fair post-deprivation judicial review." Berman v. Young, 291 F.3d 976, 985 (7th Cir. 2002); see also Miller v. City of Philadelphia, 174 F.3d 368, 372 n.4 (3d Cir. 1999) ("Initiating child custody proceedings by ex parte orders is generally constitutional if a prompt post-deprivation hearing is held.").

There is no bright-line rule for deciding whether a post-deprivation hearing is sufficiently "prompt. See Tower v. Leslie-Brown, 326 F.3d 290, 299 (1st Cir. 2003) (approving post-deprivation hearing three days after children's removal); Berman, 291 F.3d at 985 (concluding that 72-day delay was "rather outrageous," but finding no actual damages); Whisman v. Rinehart, 119 F.3d 1303, 1310 (8th Cir. 1997) (concluding that hearing held 17 days after the state had taken custody was not "prompt"); Jordan v. Jackson, 15 F.3d 333, 351 (4th Cir. 1994) (concluding that 65-hour delay in judicial review of emergency removal was "near, if not at, the outer limit of permissible delay"); Cecere v. City of New York, 967 F.2d 826, 829-30 (2d Cir. 1992) (concluding that 4-day delay was constitutionally permissible); Lossman v. Pekarske, 707 F.2d 288, 290 (7th Cir. 1983) (approving 12-day delay, based on parents' request for additional time to prepare).

The evidence introduced at trial indicates that, on May 21, while Travonne may not have been in "protective custody," he was residing at his grandmother's house and Appellants were unable to regain physical custody of him due to the presence of the PFA order. It further reveals that the first dependency hearing was scheduled for June 25, at least four weeks after Travonne began residing with his grandmother. The hearing was

then continued for two weeks at Appellants' request. On July 9, 2003, the Juvenile Court ordered that Travonne remain with his grandmother pending permission from his therapist to return home. According to Kevin Brown's testimony, Travonne did not return home until over six months after the hearing.

Whether or not the hearing here satisfied due process "promptness," we will affirm the judgment of the District Court. In order to prevail on a § 1983 claim where a "prompt" post-deprivation hearing was not conducted after the removal of a child, a plaintiff must establish "with some degree of probability[] that a timely hearing would have prevented the extended infringement on their familial rights. In other words, [she] must demonstrate actual damages resulting from the delay in the post-deprivation hearing." Berman v. Young, 291 F.3d 976, 985 (7th Cir. 2002) (internal citation and quotation omitted); see also Carey v. Piphus, 435 U.S. 247, 264 (1978) (holding that, in order to obtain compensatory damages for mental and emotional distress caused by denial of procedural due process, plaintiff must adduce proof that the injury was caused by the deprivation of due process). Here, Appellants did receive a hearing on July 9, 2003, at which time the juvenile court judge ordered that Travonne remain with his grandmother. There is no indication in the record that had the hearing been conducted earlier, a different result would have been reached. Thus, because the state court approved the placement of Travonne with his grandmother on July 9, and in light of the testimony presented at trial, we conclude that Appellants have not demonstrated any compensable

11

injury resulting from the delayed hearing. See Berman, 291 F.3d at 985 (concluding that, "especially given that the state court approved the removal" of the child from her home, the parents could not demonstrate any injury resulting from the delayed hearing); see also Lossman, 707 F.2d at 291 (holding that, even if a hearing had been conducted earlier, the result presumably would have been the same, and therefore, causation did not exist). Accordingly, we will affirm the District Court's entry of judgment as a matter of law on Appellants' procedural due process claim.

Appellants' next two claims are that the District Court erred in granting Appellee's motion in limine to dismiss Kevin Brown from the action immediately prior to the start of the trial for lack of standing and in denying their motion in limine to bar Appellee from introducing at trial materials from her files from the abuse investigation. Under the CPSL, only a "parent, guardian or other custodian" is entitled to a hearing. See 23 Pa. Cons. Stat. Ann. § 6315. Because Kevin Brown had no legal relationship with Travonne, the Court held that he would not have been entitled to a hearing and therefore lacked standing to assert a violation of his due process rights on this basis. While Appellee certainly placed the Browns at a disadvantage by raising this issue on the day of trial, it is clear that standing can never be waived. See United States v. Hays, 515 U.S. 737, 742 (1995). Accordingly, we will affirm the District Court's dismissal of Kevin Brown as a party to this action. We will also affirm the District Court's denial of Appellants' motion

12

in limine, as it is clear that the materials Appellants sought to suppress were relevant and necessary to Appellee's defense.

Finally, Appellants contest the District Court's denial of their motion to join certain parties to the complaint. We review the District Court's denial of Appellants' motion to amend their complaint for abuse of discretion. See Garvin v. City of Philadelphia, 354 F.3d 215, 219 (3d Cir. 2003). Appellants maintain that they attempted to file a motion for joinder of additional parties on July 11, 2005. In the motion, they sought to add, as plaintiffs, their minor children, and as defendants, Alfred Crump, a Solicitor for BCCYS, Wendie Ziegler, a Court-Appointed Guardian ad litem, and James Trupp, a BCCYS caseworker. The motion did not appear on the District Court's docket until February 21, 2006, six days before trial was originally scheduled to begin. The Court adjourned the trial date, gave Appellee an opportunity to respond, and on May 11, 2006, denied the motion and re-scheduled the trial for late May.

While the motion was captioned under Rule 19 of the Federal Rules of Civil Procedure, the Court properly analyzed it under Rule 15, which governs the amendment of pleadings. Relying on Rule 15(c), the District Court held that the motion for leave to amend had been filed outside of the applicable statute of limitations, and that Appellants had not offered any evidence to show that the proposed defendants had received either actual or imputed notice of the action within 120 days of filing the complaint. See Singletary v. Pennsylvania Dep't of Corrs., 266 F.3d 186, 194 (3d Cir. 2001).

13

Accordingly, the Court held that Appellants could not satisfy the relation back requirements, and therefore, denied their motion to amend.

Appellants argue that they filed the motion on July 11, 2005, within the statute of limitations, but that it was not entered on the Court's docket until February 21, 2006. In light of this discrepancy, we will not affirm the District Court's decision on this basis. We will, however, affirm on other grounds. See Nicini, 212 F.3d at 805. While Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires," it may be denied when amendment would be futile. Appellants claim that both Crump and Ziegler discriminated against them on the basis of race by objecting to the reunification of Appellants' family in the context of the dependency proceedings. Based on the record below, we conclude that Crump and Ziegler would have been entitled to absolute immunity for their roles in Appellants' dependency proceedings. See Ernst v. Children & Youth Servs. of Chester County, 108 F.3d 486, 495 (3d Cir. 1997) (defendants entitled to "absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings"). In light of the proposed defendants' immunity, Appellants would have been unable to withstand a motion to dismiss, and therefore amendment would have been futile. See Hill v. Scranton, 411 F.3d 118, 134 (3d Cir. 2005).

14

We will also affirm the District Court's denial of Appellants' motion to amend the complaint to add caseworker James Trupp as a defendant.[1]  See Nicini, 212 F.3d at 805. Appellants allege that Trupp discriminated against them on the basis of race and violated their rights to due process and family integrity by contacting Dr. Thomas Baker, a psychologist who was appointed by the Juvenile Court to evaluate the family, and requesting a copy of his assessment without Appellants' consent, objecting to the reunification of the family at the dependency hearing, and seeking to remove Erica Brown's daughter from her custody.  Appellants' allegations against Trupp do not demonstrate violations of their constitutional rights.  The transcript from the July 9, 2003 Juvenile Court hearing clearly indicates that the court ordered that Dr. Baker's report be made available to the guardian and the agency.  Trupp's objection to the reunification of the family and his participation in dependancy proceedings likewise do not amount to violations of Appellants' constitutional rights.  See Miller v. Philadelphia, 174 F.3d 368, 377 (3d Cir. 1999) (holding that, to constitute a substantive due process violation, a social worker's conduct must "shock the conscience"); Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997) ("The right to familial integrity, in other words, does not include a right to remain free from child abuse allegations.").

---

[1] We note that Appellants initially sought to add Trupp as a defendant on October 13, 2003, two months after the initial complaint was filed.  The District Court denied Appellants leave to amend without prejudice pending its ruling on Appellees' motion to dismiss.

15

Finally, Appellants sought to add their minor children as plaintiffs in the action. As pointed out by Appellee, Appellants, as non-lawyers, would not be permitted to represent their children in an action in federal court. See Osei-Afriyie v. Medical College of Pennsylvania, 937 F.2d 876, 884 (3d Cir. 1991). As Appellants' proposed amendments would have been futile, we conclude that the District Court did not abuse its discretion in denying appellant's motion for leave to amend.

Accordingly, we will affirm the judgment of the District Court.