# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3411

_____

Lisa Schmidt,                                       *
                                                    *
            Appellant,                              *
                                                    *   Appeal from the United States
      v.                                            *   District Court for the
                                                    *   Southern District of Iowa.
Des Moines Public Schools; Helen                    *
Oliver, in his/her official and individual          *
capacity; James Mollison, in his/her                *
official and individual capacity;                   *
Alexander Henna, in his/her official                *
and individual capacity; Diane Keum, in             *
his/her official and individual capacity;           *
Jane Dare, in his/her official and                  *
individual capacity; City of Des Moines;            *
Officer M. Dahlen, Badge Number 4901,               *
in his/her official and individual                  *
capacity; Officer M. Strausser, Badge               *
Number 4904, in his/her official and                *
individual capacity,                                *
                                                    *
            Appellees.                              *

_____

Submitted: May 10, 2011
    Filed: September 14, 2011

_____

Before MURPHY, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

This case arises out of a contentious and long-running dispute between Lisa Schmidt and her ex-husband over the education and custody of their three minor children. Schmidt brought this action against two separate groups of defendants. The first is the City of Des Moines and police officers Michelle Strawser[1] and Matthieu Dahlen (the "City Defendants"); Schmidt alleges that they unlawfully impeded her access to the children. The second is the Des Moines Public Schools and five of its employees (the "School District Defendants"); Schmidt asserts that they unlawfully denied her access to the children and their educational records. Schmidt argued that the defendants' conduct violated her rights under the federal and Iowa constitutions. The district court[2] dismissed Schmidt's claims against the City Defendants for failure to state a claim and granted summary judgment for the School District Defendants. We affirm.

I.

Schmidt's ex-husband, Michael Schmidt, filed for divorce in September 2005, and Schmidt moved from Iowa to the East Coast shortly thereafter. At the time, the Schmidts had three minor children who were enrolled in schools within the Des Moines Independent Community School District. In August 2006, an Iowa state court issued an order awarding the Schmidts joint legal custody of the children and granting Michael Schmidt primary physical custody and care of the children. The order also set forth a schedule granting Lisa Schmidt visitation periods with the children during certain holidays and school breaks. It provided for additional visitation only "as

[1]Although the complaint identifies this officer's last name as "Strausser," we adopt the spelling used by the City Defendants and the district court.

[2]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

mutually agreed to by and between the parties so as not to interfere with the health, education and welfare of the parties' minor children." A final divorce decree in February 2007 did not materially alter the terms of the August 2006 order.

During a visit to Iowa on November 20, 2006, Schmidt obtained a state court order allowing her to exercise "special visitation" with the children. The order provided for three hours of visitation on each of the evenings of November 20 and November 21, and for four hours on the evening of November 22. Schmidt exercised visitation with one of the children on November 20. When she arrived at her ex-husband's house on November 21, however, she encountered Officers Strawser and Dahlen of the Des Moines Police Department. The officers prevented her from approaching the residence.

Schmidt alleged that these officers told Schmidt that they would not allow her to exercise her visitation because the children did not want to attend. Schmidt was therefore unable to enter her ex-husband's property or speak with the children on the evening of November 21. Schmidt does not allege that she was unable to exercise the scheduled visitation with the children on the following day, November 22. All of Schmidt's claims against the City Defendants arise out of the incident on November 21.

Schmidt's claims against the School District Defendants arise out of a series of disputes between Schmidt and the children's schools from late 2006 to approximately 2008. On several occasions, Schmidt unsuccessfully attempted to visit the children at their schools during the school day. In some cases, school officials told the children that Schmidt was at the school and wanted to visit with them. The children told the officials that they did not want to see Schmidt, and Schmidt was not granted access to the children. On one occasion, Schmidt attempted to visit one of the children during a school performance, and a school official told her that the child was not at

school. Schmidt believed, however, that an administrator escorted the children out the back door after Schmidt arrived so that she could not see them.

Schmidt testified that a swim coach responded to Schmidt's inquiries about the children's swimming activities by telling her to talk to her ex-husband or one of the children. According to Schmidt, when she asked an attendance clerk why one of the children had been absent from school, the clerk refused to give her all the information she had requested. Schmidt also recalled that school officials refused to send her schoolwork and certain school projects completed by one of the children, and did not allow her to speak to one of the children on the telephone on his birthday. Schmidt's ex-husband sent several letters and e-mails to school officials during this period. The correspondence informed them about the terms of the court orders and asked them not to permit Schmidt to visit the children during school hours or to withdraw them from school.

The School District's written policy on the rights of noncustodial parents states that, as a general matter, noncustodial parents may receive reports and other correspondence from the school upon written request, and "[p]arents . . . may be provided access to their students during school hours or school-related activities only so long as this access does not cause or threaten to cause material and substantial disruption to school or school-related activities." The policy also provides that "[t]he district will obey all court orders relating to custody issues and parental rights," and that therefore "the rights afforded parents under this policy may be limited in any individual situation." The School District's general counsel, Elizabeth Nigut, reviewed the relevant court orders to develop a policy for school officials on how to deal with Schmidt's visits. Nigut informed school officials that the divorce decree established that Schmidt could not "just appear at school and demand to see the children unless there has been prior approval by" Schmidt's ex-husband. She also noted that Schmidt "is prone to become demonstrative in a negative way if she cannot see the kids," and that the officials could advise Schmidt that the police would be

contacted if she did not leave school premises and continued to conduct herself inappropriately.

Schmidt filed this action in November 2008. She alleged, pursuant to 42 U.S.C. § 1983, that each of the defendants violated her substantive due process and procedural due process rights under the Due Process Clause of the Fourteenth Amendment, and that each of the defendants violated her rights under the Equal Protection Clause of the Fourteenth Amendment by treating her differently than a married parent. She also alleged that each of the defendants violated her rights to substantive due process, procedural due process, and equal protection under the Iowa Constitution. Schmidt sought compensatory and punitive damages and attorneys' fees and costs.

The district court dismissed the claims against the City Defendants for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), concluding that Schmidt's allegations "do not rise to [the] level of a substantive due process violation," and that the remedies available to Schmidt under state law were sufficient to ensure that she was afforded procedural due process. The district court also determined that Schmidt failed to state an equal protection claim against the City Defendants, because she was not similarly situated to a typical married parent. The court later granted summary judgment for the School District Defendants. The court ruled that Schmidt failed to demonstrate that she was deprived of a constitutionally protected liberty interest, that the defendants' conduct shocked the conscience, or that she had been treated differently than a similarly situated married parent. The court also denied Schmidt's motion for partial summary judgment against the Des Moines Public Schools. Schmidt filed a timely notice of appeal.

II.[3]

We first consider Schmidt's substantive and procedural due process claims against the City Defendants; Schmidt does not challenge the district court's dismissal of her equal protection claims. We review *de novo* a district court's decision to grant a motion to dismiss, accepting as true the facts alleged in the complaint. *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

A.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State . . . shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.[4] This provision contains a "substantive component" that "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (internal quotation omitted). To establish a violation, a plaintiff "must demonstrate *both* that the official's conduct was

---

[3]With respect to Part II, Judge Beam concurs only in the result.

[4]The Supreme Court of Iowa has "considered the federal and state due process clauses to be identical in scope, import, and purpose," and has construed the two provisions as coextensive when the proponent of a due process claim "has not given us reason to interpret the federal and Iowa due process clauses differently." *State v. Bower*, 725 N.W.2d 435, 441 (Iowa 2006). Schmidt has given us no reason to construe the Iowa and federal constitutions differently, so we analyze her state and federal due process claims under federal due process law.

conscience-shocking, *and* that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Norris v. Engles*, 494 F.3d 634, 638 (8th Cir. 2007) (internal quotation omitted).

Parents have a fundamental liberty interest in the care, custody, and management of their children. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *see also Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) (plurality opinion). But this right "is not absolute," *Manzano v. S.D. Dep't of Soc. Servs.*, 60 F.3d 505, 510 (8th Cir. 1995), as illustrated by our decision in *Zakrzewski v. Fox*, 87 F.3d 1011, 1014 (8th Cir. 1996).

*Zakrzewski* involved a § 1983 action brought by a noncustodial parent, Zakrzewski, against several law enforcement officials who ordered Zakrzewski to return his child to his ex-wife following a dispute over whether Zakrzewski could exercise his monthly six-day visitation period during a particular week. *Id.* at 1012-13. He argued that the officers infringed his substantive due process right to participate in the care, custody, and management of the child. *Id.* at 1013. This court concluded that no substantive due process violation occurred, because "[e]ven assuming the officials deviated from proper procedure, the one-time interruption of Zakrzewski's right to visitation in this case does not amount to a deprivation of liberty." *Id.* at 1014. The court also determined that "[t]he official conduct in this case was within the bounds of reasonableness and does not shock the conscience." *Id.*

Schmidt's substantive due process claim is very similar to the claim in *Zakrzewski*. Schmidt alleges that she was deprived of only a short period of visitation with the children: one three-hour visit, as opposed to a visitation period of several days in *Zakrzewski*. *Zakrzewski* held that a one-time, temporary interruption in

visitation rights did not deprive a noncustodial parent of a liberty interest sufficient to support a substantive due process claim. *Id.*; *see also Brittain v. Hansen*, 451 F.3d 982, 996 (9th Cir. 2006); *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981).

Schmidt asserts that the deprivation here was more significant because she lives in a different State, and therefore has fewer opportunities to see the children. Yet the fact remains that Schmidt alleges only a deprivation of one three-hour visitation period. There is no allegation that the City Defendants prevented her from seeing the children on the day before or after, or at any other time. That she lives in a different State does not suffice to convert the loss of a single three-hour visit into a deprivation of a fundamental right for purposes of substantive due process.

Schmidt attempts to distinguish *Zakrzewski* by arguing that she is a joint legal custodian of the children, rather than a noncustodial parent, and that she therefore enjoys a greater liberty interest in parenting the children. Schmidt's custodial status gives her the right to equal participation in various matters affecting the children, including legal and educational decisions. *See* Iowa Code § 598.1(3). The divorce decree, however, gives Schmidt's ex-husband primary physical custody of the children, and limits Schmidt to a set visitation schedule that can be amended only by mutual agreement of the parties. As in *Zakrzewski*, Schmidt's parenting liberty interest has thus been "substantially reduced by the terms of the divorce decree and [state] law." *Zakrzewski*, 87 F.3d at 1014.

Schmidt also contends that *Zakrzewski* is inapplicable because she was attempting to exercise a court-ordered visitation period when she encountered the officers. But Zakrzewski himself was attempting to enforce what he considered to be his rights under a divorce decree, and was ultimately vindicated when the state court held his ex-wife in contempt for violating the decree. *Id.* This court nevertheless held that a temporary interruption in visitation with the children, "[e]ven assuming the officials deviated from proper procedure," did not constitute a deprivation of

-8-

Zakrzewski's fundamental liberty interest in the care, custody, and management of his child. *Id.* at 1013-14.

Even if Schmidt could show a deprivation of a fundamental liberty interest, moreover, the officers' alleged conduct would not shock the conscience. The officers were asked to intercede in a contentious custody dispute involving a court-ordered visitation that the children apparently were unwilling to attend. That the officers may have misinterpreted their obligations under a court order while addressing this difficult situation does not rise to the level of arbitrary government action and egregious misconduct necessary to state a substantive due process claim. *See Brittain*, 451 F.3d at 996; *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999).

B.

Schmidt also argues that the district court erred in dismissing her procedural due process claim against the City Defendants. "To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." *Gordon*, 168 F.3d at 1114 (internal citation omitted). "Due process is a flexible concept, requiring only 'such procedural protections as the particular situation demands.'" *Clark v. Kan. City Mo. Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). "The fundamental requirement of due process 'is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mathews*, 424 U.S. at 333).

After *Zakrzewski*, in an appeal involving only procedural due process, this court held that a noncustodial parent with visitation rights has, "at least in some form," a liberty interest in the care, custody, and management of his child. *Swipies v. Kofka*, 419 F.3d 709, 714 (8th Cir. 2005). The court left open the possibility that "a *de*

*minimis* exception attaches to this liberty interest," and did not address whether the analysis of liberty interest differs for claims of procedural and substantive due process. *Id.*; *cf. Brittain*, 451 F.3d at 996, 1000 (holding that single deprivation of one-week visitation did not deprive noncustodial parent of "fundamental" liberty interest for substantive due process analysis, but that "[p]rocedural due process claims should not be subject to *de minimis* analysis" and that parent had a "liberty interest" for that purpose). Assuming for the sake of analysis that Schmidt has alleged a deprivation of a protected liberty interest that triggers procedural rights, we conclude that she failed to allege that she was deprived of that interest without sufficient process.

In *Zakrzewski*, this court held that the plaintiff had failed to demonstrate a procedural due process violation by officers who cut short his visitation with his children because there were adequate state-law remedies providing for the enforcement of visitation orders. *Zakrzewski*, 87 F.3d at 1014. The court noted that state law allowed a state court to modify a visitation order or hold a noncomplying parent in contempt, and that Zakrzewski had taken advantage of these remedies without any interference from law enforcement. *Id.*

Iowa law provides that an aggrieved parent can request that a state court hold a noncomplying parent in contempt, modify visitation to compensate the aggrieved parent for lost visitation time, transfer custody of the children, or impose other sanctions or requirements. *See* Iowa Code § 598.23. Schmidt availed herself of these procedures, filing a sixty-eight-count action for contempt against her ex-husband on the day after her encounter with the City Defendants. There is no indication that the City Defendants interfered with Schmidt's use of these procedures, and the state court eventually held her ex-husband in contempt for willfully failing to comply with the court's order concerning the visitation on November 21, 2006.

Schmidt argues that procedural due process entitled her to a hearing prior to the interruption of her visitation period. This court has held, however, that state post-deprivation proceedings are adequate to satisfy procedural due process when a visitation period is temporarily cut short. *See Zakrzewski*, 87 F.3d at 1014; *see also Fitzgerald v. Williamson*, 787 F.2d 403, 408 (8th Cir. 1986) (holding that due process did not require a hearing before visitation rights were reduced); *Brittain*, 451 F.3d at 1000-02.

Schmidt also contends that the post-deprivation proceedings offered by the State were insufficient, because the state court took fifty-one days to hold a hearing on her contempt motion. She relies on *Swipies*, where this court held that a noncustodial father's procedural due process rights were violated when the state did not provide him with a hearing until seventeen days after an officer removed his child from his custody. 419 F.3d at 715. But *Swipies* involved a deprivation of a parent's entire two-week visitation period, rather than a single three-hour visit. *See id.* at 713-14. "The circumstances of the deprivation dictate what procedures are necessary to satisfy" procedural due process. *Id.* at 715. Given the relatively minimal deprivation alleged in this case, the hearing was adequate to protect Schmidt's right to be heard at a meaningful time and in a meaningful manner. Schmidt has thus failed to state a procedural due process claim against the City Defendants.

III.

We next address Schmidt's substantive and procedural due process and equal protection claims against the School District Defendants. We review *de novo* a district court's decision to grant a motion for summary judgment, viewing all facts in the light most favorable to the nonmoving party and making all reasonable inferences in her favor. *Cent. Platte Natural Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1146 (8th Cir. 2011). Summary judgment is appropriate when the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

## A.

Schmidt argues that the district court erred in rejecting her substantive due process claim, because the defendants' policy of restricting her access to the children during school hours violated her fundamental liberty interest in the care, custody, and management of her children.  We disagree.  It is not clear that a parent's fundamental liberty interest in the care, custody, and management of her children includes unfettered access to the children during a school day.  *See Meadows v. Lake Travis Ind. Sch. Dist.*, 397 F. App'x 1, 2 (5th Cir. 2010) (per curiam); *Crowley v. McKinney*, 400 F.3d 965, 969 (7th Cir. 2005); *Bangura v. City of Phila.*, No. 07-127, 2008 WL 934438, at *4 (E.D. Pa. Apr. 1, 2008).  But whatever the scope of that liberty interest, it can be "substantially reduced by the terms of [a] divorce decree and [state] law." *Zakrzewski*, 87 F.3d at 1014.  Schmidt's liberty interest was substantially reduced by the relevant divorce decrees, which restricted her visitation with the children to a specific schedule and allowed her to exercise visitation outside that schedule only with her ex-husband's assent.  Schmidt thus had no fundamental liberty interest in contacting her children at their schools.

Schmidt argues that the School District Defendants misconstrued the relevant state court orders, and that the restrictions on her visitation with the children do not apply while the children are at school.  Even if Schmidt is correct, the conduct of school officials was not the sort of arbitrary government action that might support a substantive due process claim.  It was reasonable for the defendants to construe the court orders to prohibit Schmidt from interrupting the children's school day without the prior consent of her ex-husband, particularly in light of the proviso that additional visitation with the children must be arranged "so as not to interfere with the . . . education . . . of the parties' minor children."  The doctrine of substantive due process

is reserved for truly extraordinary and egregious cases; it does not forbid "reasonable, though possibly erroneous, legal interpretation." *Brittain*, 451 F.3d at 996.

We also reject Schmidt's assertion that the defendants violated her substantive due process rights by failing to provide her with schoolwork and information about her children's attendance and athletic activities. It is open to question whether and to what extent the fundamental liberty interest in the custody, care, and management of one's children mandates parental access to school records. *See, e.g.*, *Crowley*, 400 F.3d at 969. But the deprivations that Schmidt alleges are so minor and sporadic that they would not rise to the level of a substantive due process violation in any event. The defendants fulfilled at least some of Schmidt's requests for information about the children, and gave her access to an online records system that displayed the children's grades, assignments, and attendance information. *See Pisacane v. Desjardins*, 115 F. App'x 446, 451 (1st Cir. 2004) (concluding that no substantive due process violation occurred when a school did not engage in an "unconditional refusal" to show a child's records to his parents, but instead made the records available on other occasions). We agree with the district court that an attendance clerk's one-time refusal to tell Schmidt why one of the children had been absent from school, a coach's referral of Schmidt to her ex-husband for information about the children's swimming activities, and the schools' refusal to send Schmidt all of the school projects she requested did not amount to a deprivation of a fundamental liberty interest. *See Zakrzewski*, 87 F.3d at 1014; *cf. Pisacane*, 115 F. App'x at 451.

B.

Schmidt asserts that she also demonstrated that the defendants violated her procedural due process rights by infringing on her parenting liberty interest and leaving her "without recourse to a state law remedy." Even assuming that Schmidt demonstrated an infringement on a protected liberty interest, the state-law procedures in place to remedy such violations were sufficient to provide her with due process.

-13-

If Schmidt believed that the defendants were misinterpreting the divorce decree's visitation provisions, she could have sought modification of the decree in state court at any time. *See In re Marriage of Brown*, 778 N.W.2d 47, 51-52 (Iowa Ct. App. 2009). Schmidt could have submitted a formal written request to the school district for the educational records and information she sought about the children, pursuant to the school district's policy concerning noncustodial parents. Schmidt also could have requested a contempt proceeding in which the state court could order Schmidt's ex-husband to permit the schools to provide any information that Schmidt requested. *See* Iowa Code § 598.23(2)(d). Schmidt eventually pursued the latter course, and the state court issued an order in September 2008 requiring Michael Schmidt to "execute any and all documents necessary to allow [Schmidt] access . . . to any and all records or documents concerning the parties' minor children including . . . school records." Given the limited nature of any infringement on Schmidt's protected liberty interest, these procedures were sufficient to protect Schmidt's right to procedural due process. *See Swipies*, 419 F.3d at 715.

## C.

Schmidt next contends that the district court erred in granting summary judgment to the defendants with respect to her equal protection claims. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state . . . shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To establish a violation of this provision, a plaintiff must show that she "was treated differently than other persons who were in all relevant respects similarly situated." *Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009) (internal quotation omitted). Although the Supreme Court of Iowa has not always interpreted the equal protection clause of the Iowa Constitution consistently with its federal counterpart, a plaintiff bringing an equal protection claim under Iowa law still must show that she was treated differently than other similarly situated persons. *See Hennings*, 744 N.W.2d at 339.

Schmidt asserts that the defendants treated her differently than a married parent who has legal custody of her children, and that the defendants treated her differently than Michael Schmidt. But Schmidt is not similarly situated in all relevant respects to a typical married parent, who has full legal and physical custody of his or her children, or to Michael Schmidt, who has joint legal custody and primary physical custody of his children. Schmidt has joint legal custody of her children but does not have primary physical custody of her children. Under such an arrangement, "the parent with primary physical care has the responsibility to maintain a residence for the child and has the sole right to make decisions concerning the child's routine care," while "[t]he noncaretaker parent is relegated to the role of hosting the child for visits on a schedule determined by the court to be in the best interest of the child." *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007). Schmidt's rights under state law and her role in the children's lives thus vary significantly from the rights and role afforded to Michael Schmidt or to a typical married parent. *See Crowley*, 400 F.3d at 972 (rejecting an equal protection claim alleging that a school district discriminated against noncustodial parents).

\* \* \*

The judgment of the district court is affirmed.

_____

-15-